IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILLIE J. WILLIAMS,                                    Case No. 6:16-cv-00966-JR

                  Plaintiff,                         OPINION AND ORDER

       v.

NANCY A. BERRYHILL,
Acting Commissioner, Social
Security Administration,

                  Defendant.

RUSSO, Magistrate Judge:

       Plaintiff Willie Williams brings this action for judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying his application for Title XVI Social

Security Income ("SSI"). All parties have consented to allow a Magistrate Judge to enter final

orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c).

For the reasons set forth below, the Commissioner's decision is reversed and this case is

remanded for further proceedings.

## PROCEDURAL BACKGROUND

In May 2012, plaintiff applied for SSI alleging disability as of January 5, 2006. Tr. 189-94. His application was denied initially and upon reconsideration. Tr. 103-06, 110-11. On November 5, 2014, a hearing was held before an Administrative Law Judge ("ALJ"); plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 37-65. On January 15, 2015, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 13-25. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-7.

## STATEMENT OF FACTS

Born on December 31, 1976, plaintiff was 29 years old on the alleged onset date and 37 years old at the time of the hearing. Tr. 189. Plaintiff graduated from high school and attended classes at Western Oregon University. Tr. 207, 290. He worked previously as a recycling laborer, pizzeria manager, and shipping supervisor. Tr. 207, 278. Plaintiff alleges disability due to: bipolar disorder, depression, post-traumatic stress disorder ("PTSD"), and back pain. Tr. 206.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. At step one, the Commissioner determines whether a claimant is engaged in substantial gainful activity. Yuckert, 482 U.S. at 140; 20 C.F.R. § 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c). If the claimant does not have a severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments . . . the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 416.920(f). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner.

At step five, the Commissioner must establish the claimant can perform other work existing in significant numbers in the national or local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.966.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found plaintiff had not engaged in substantial gainful activity since the application date. Tr. 15. At step two, the ALJ determined the following impairments were medically determinable and severe: "degenerative disc disease, obesity, bipolar disorder NOS, depression, PTSD, [and] anxiety." Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of the listed impairment. Id.

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work except that he is limited to: "no more than frequent climbing of ramps or stairs, balancing, and crawling"; "no more than occasional climbing of ladders, ropes, or scaffolds, stooping, kneeling, and crouching"; "simple instructions"; and "only occasional interaction with coworkers and supervisors and no interaction with the public." Tr. 17.

At step four, the ALJ determined plaintiff could not perform any past relevant work. Tr. 23. At step five, the ALJ concluded, based on the VE's testimony, there existed a significant number of jobs in the national and local economy plaintiff could perform despite his impairments, such as electronics worker, electrical accessories assembler, and inspector and hand packager. Tr. 24.

**DISCUSSION**

Plaintiff argues the ALJ erred by: (1) improperly weighing the medical opinions of Damon Tempey, Ph.D., and physician assistant Christopher Wallis regarding his mental impairments; (2) rejecting his subjective symptom testimony concerning his mental impairments; and (3) making an improper step five finding.

**I.      Medical Evidence**

Plaintiff asserts the ALJ wrongfully discredited mental health evidence from Dr. Tempey and Mr. Wallis.

**A.      Dr. Tempey**

There are three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. Id. To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons supported by substantial evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons supported by substantial evidence. Id.

In 2011, plaintiff sought care from Dr. Tempey for his psychological symptoms; their treating relationship initially consisted primarily of medication management. Tr. 310-28, 542. Beginning in April 2013, plaintiff sought counseling, in addition to medication management, from Dr. Tempey approximately every month. Tr. 455-535. Plaintiff was generally compliant with Dr. Tempey's recommendations except for two brief periods – one in 2012 and the other in 2014 – when plaintiff discontinued his prescribed medications. Tr. 338, 474.

On October 16, 2013, Dr. Tempey completed a check-box Mental Residual Functioning Capacity ("MRFC") form. Tr. 376-79. Dr. Tempey indicated plaintiff was moderately-severely or severely limited[1] in his ability to: remember locations and work-like procedures; understand and remember detailed instructions; carry out very short and simple, or detailed, instructions; maintain attention and concentration for extended periods; perform activities as scheduled, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods; interact with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. Tr. 377-79. In the narrative portion of Dr. Tempey's MRFC, he opined that a "[c]ombination of severe depression + back problems makes it unlikely [plaintiff] will be able to successfully participate in the work force." Tr. 379.

The ALJ afforded "little weight" to Dr. Tempey's opinion because it was inconsistent with the medical record, which demonstrated plaintiff's "back pain has been well-controlled since July 2012 and his psychological symptoms have been well-controlled when he takes his

---

[1] The MRFC form defines "moderately-severe" as "[a] limitation which seriously interferes with the individual's ability to function in the designated area, and precludes the individual's ability to perform the designated activity on a regular and sustained basis for 8 hours per day, 5 days per week." Tr. 376. "Severe" is defined as a limitation that "precludes the individual's ability to function in the designated area." Id.

medications as prescribed, which he did for most of 2013 and 2014, as evidenced from primary care treatment records [from Mr.] Wallis." Tr. 23.

"A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider." Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) (citations omitted). Here, however, substantial evidence does not support the ALJ's conclusion that Dr. Tempey's opinion was inconsistent with the mental health treatment notes.

As plaintiff's longstanding mental health specialist, Dr. Tempey had a "longitudinal picture" of plaintiff's impairments. SSR 06-03p, available at 2006 WL 2329939; Tr. 308-28, 376-79, 454-535, 542. His own chart notes, especially from 2013 and 2014, reflect ongoing and continuous treatment for significant depression, anxiety, PTSD, and bipolar disorder. Tr. 455-535. Moreover, there is no evidence in the record from an examining or treating source, including the chart notes of Mr. Wallis, to contradict Dr. Tempey's opinion. See, e.g., Tr. 264, 287-94, 333-64, 374, 380-435, 537-40. Indeed, the record is replete with evidence demonstrating the seriousness of plaintiff's mental impairments; although he engaged in regular treatment for several years, he consistently experienced psychological symptoms at a level which significantly interfered with his daily functioning. Tr. 47-56, 264, 204, 231-40, 374, 380-435, 455-535, 537-40, 542. Despite some waxing and waning of symptoms, these issues persisted even during periods plaintiff was fully compliant with his medications. See, e.g., Tr. 47-52, 380-435, 455-73, 476-535; see also Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014) ("[c]ycles of improvement and debilitating symptoms are a common occurrence [with mental health impairments], and in such circumstances it is error for an ALJ to pick out a few isolated

instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working").

As such, the ALJ impermissibly mischaracterized the record in affording less weight to Dr. Tempey's assessment.  See Ghanim, 763 F.3d at 1161-62 (reversing the ALJ's evaluation of medical opinion evidence under analogous circumstances); see also Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record" and therefore did not constitute substantial evidence).  The ALJ erred in weighing Dr. Tempey's opinion.[2]

### B.     Mr. Wallis

While only "acceptable medical sources" can diagnose and establish a medical impairment exists, evidence from "other medical sources," including physician's assistants, can be used to determine the severity of the impairment and how it affects the claimant's ability to work.  SSR 06-03p, available at 2006 WL 2329939.  To reject the opinion of an "other medical source," the ALJ must provide a germane reason supported by substantial evidence.  Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).

Although plaintiff began treatment with Mr. Wallis in 2007 for his mental and physical impairments, the record does not contain chart notes from Mr. Wallis prior to January 2012.  Tr. 264, 362-64.   Beginning in January 2013, plaintiff sought treatment from Mr. Wallis approximately once per month (in addition to his regular appointments with Dr. Tempey).  Tr.

---

[2] Dr. Tempey also provided a post-decisional letter responding to the ALJ's unfavorable decision.  Tr. 542.  Although there is no dispute this letter properly constitutes part of the record, the ALJ did not have the opportunity to consider it as part of her decision.  Regardless, it further indicates the ALJ's reasons for discrediting Dr. Tempey's opinion was not supported by substantial evidence.  Notably, Dr. Tempey reiterated that, "[a]t the best of times, [plaintiff's] severe depression and PTSD symptoms are barely under control when he's taking appropriate medications."  Tr. 542.  Dr. Tempey further opined that plaintiff's "emotional disabilities would [not] allow him to carry out" the representative occupations identified by the VE.  Id.

380-436, 537-40.  In May 2013, Mr. Wallis submitted a letter stating that plaintiff's back pain and bipolar disorder precluded him from employment.  Tr. 264.  In July 2014, Mr. Wallis authored a second letter in which he opined plaintiff "is unable to maintain gainful employment due to mental and physical ability."  Tr. 374.

The ALJ gave "little weight" to Mr. Wallis' opinion because "it is a summary statement that does not offer any specific evidence as to why [plaintiff] would be unable to work."  Tr. 23. The ALJ also found that "when [plaintiff] takes his medication as prescribed he has shown significant medical improvement."  Id.

As to the ALJ's first rationale, it is well-established that an ALJ cannot disregard the opinion of a non-acceptable medical source as conclusory where, as here, that source's opinion is supported by longitudinal treatment notes.  Garrison, 759 F.3d at 1013-14.  At the time of the ALJ's decision, Mr. Wallis had been treating plaintiff for approximately eight years.  Tr. 264. Mr. Wallis' more recent chart notes from 2013 and 2014 document plaintiff's persistent mental health problems and, as such, are consistent with his opinion letters.  Tr. 380-436, 537-40.

Concerning the ALJ's second rationale, as discussed in Section I(A), the record overwhelmingly reflects that plaintiff continued to suffer significant psychological symptoms despite full medication compliance.  In fact, Mr. Wallis himself repeatedly noted that plaintiff still suffered from depression, anxiety, and/or intrusive thoughts when he was taking his medications as prescribed.  See, e.g., Tr. 335-36, 355-56, 386-91, 394, 396-97, 404-07, 410-11, 416, 426, 428.  In sum, the ALJ committed harmful legal error in evaluating the medical opinion evidence regarding plaintiff's mental impairments.  See Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (only mistakes that are "non-prejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless).

## II. Plaintiff's Testimony

Plaintiff contends the ALJ neglected to provide a legally sufficient reason, supported by substantial evidence, to reject his subjective symptom statements concerning the severity of his mental impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, available at 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified that the "main thing" preventing him from working was his mental impairments – specifically, his tendency to self-isolate and social anxiety. Tr. 54. Plaintiff stated that he self-isolates in his room for "a week and a half [or] two weeks," approximately three times per year, to mitigate intrusive, "racing thoughts." Tr. 50-51, 56.

During these periods, plaintiff remarked that he does not do "anything but just watch television and sleep"; he even takes his meals in his room.  Tr. 50-51.  Plaintiff also explained that he has panic attacks "[p]retty much every time [he] go[es] out in public."  Tr. 54-56.

After summarizing his hearing testimony, the ALJ determined plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but his statements regarding the extent of his depression and social anxiety were not fully credible because the evidence of record evinced he "secluded himself in his room [as] a personal choice" to avoid family members that were staying in his house.  Tr. 22.  In addition, the ALJ noted that "panic attacks make few appearances, if any, in the treatment records from [Mr.] Wallis or Dr. Tempey."[3]  Id.

Although inconsistencies between a claimant's hearing testimony and the record can be a legally sufficient reason for an adverse credibility finding, that reason is not supported by substantial evidence on this record.  Namely, the medical evidence reflects that plaintiff self-isolated both before and after the period during which he had houseguests.  Compare Tr. 410, 485 (plaintiff had family members living with him between November 2013 and March 2014), with Tr. 469, 471, 473, 501-02, 511, 514, 516 (evidence of plaintiff self-isolating pre-November 2013 and post-March 2014).  Furthermore, an independent review of the record reveals multiple references in the chart notes of Mr. Wallis and Dr. Tempey to plaintiff's panic attacks and/or severe anxiety.  See, e.g., Tr. 312, 338, 404, 416, 426, 428, 471.

Therefore, the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, to reject plaintiff's subjective symptom testimony concerning the extent of his mental health impairments.  The ALJ's credibility finding is reversed.

---

[3] To the extent the ALJ also relied on plaintiff's failure to seek mental health treatment, as addressed above, the record is to the contrary.  Tr. 22.

**III.    Step Five Finding**

Plaintiff argues the ALJ's step five finding is erroneous because the hypothetical question posed to the VE did not adequately account for all of his limitations.  As discussed herein, the ALJ wrongfully rejected portions of plaintiff's subjective symptom testimony, as well as the medical opinions of Dr. Tempey and Mr. Wallis.  Because the ALJ failed to account for the concrete work-related limitations of function outlined in this evidence, the ALJ erred in relying upon the VE's testimony.  See Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (if a VE's "hypothetical does not reflect all the claimant's limitations, then the . . . testimony has no evidentiary value") (citations and internal quotation marks omitted).  Accordingly the ALJ's ultimate decision is not supported by substantial evidence and remand is necessary.

**IV.    Remand**

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court.  Harman v. Apfel, 211 F.3d 1172, 1176-78 (9th Cir. 2000).  The issue turns on the utility of further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision.  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099-1100 (9th Cir. 2014).  The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act.  Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011); see also Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ erred by failing to provide legally sufficient reasons, supported by substantial evidence, for discrediting plaintiff, Dr. Tempey, and Mr. Wallis. Nevertheless, the record is ambiguous concerning if/when plaintiff's mental impairments became disabling. On the one hand, plaintiff alleges a disability onset date of 2006, but the record before the Court does not reflect any regular and continuous psychological treatment until 2013. Tr. 44-45, 380-540. Moreover, the Court notes that, although both Dr. Tempey and Mr. Wallis opined plaintiff's physical impairments – particularly, his back pain – contributed to plaintiff's inability to work, the medical evidence does not demonstrate any significant back impairment for the reasons the ALJ identified in formulating the RFC. Tr. 21-22; see also Pl.'s Reply Br. 5 (plaintiff acknowledging that his back pain "has been, more or less, controlled with medication").

In light of these ambiguities, further proceedings are required to resolve this case. Upon remand, the ALJ must review the entire record (including Dr. Tempey's post-decision letter) and, if necessary, reformulate plaintiff's RFC and obtain additional VE testimony.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 1st day of August 2017.

s/Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge